IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DENISE WANDA McGEE,
    Plaintiff,

vs.                                            Case No. 5:10cv167/RH/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

Plaintiff's application for DIB, filed August 15, 2006, was denied initially and on reconsideration (Tr. 20).[1] On September 29, 2008, following an administrative hearing, an administrative law judge ("ALJ") found that Plaintiff was not under a "disability" as defined in the

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on September 8, 2010 (Doc. 11). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

Act (Tr. 20–29). On May 14, 2010, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 1–3). Thus, the decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

The ALJ made the following findings (*see* Tr. 20–29) relevant to the issues raised in this appeal:

1) Plaintiff has not engaged in substantial gainful activity since September 1, 2005, the date she alleges she became disabled.

2) Plaintiff meets the insured status requirements of the Act through September 30, 2008.[2]

3) Plaintiff has only one severe impairment: chronic obstructive pulmonary disease. She has six non-severe impairments: hepatitis C, history of alcohol abuse, hypertension, depression, post-traumatic stress disorder, and carpal tunnel syndrome.

4) Plaintiff has no impairment of combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5) Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

6) Plaintiff can perform her past relevant work as a housekeeper, telemarketer, laundry attendant, security guard, and delicatessen clerk.

7) Plaintiff, therefore, has not been under a disability, as defined in the Act, from September 1, 2005, through September 29, 2008, the date of the ALJ's decision.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by

---

[2] Thus, the time frame relevant to this appeal is September 2005 through September 2008.

Case No. 5:10cv167/RH/EMT

substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.
2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL HISTORY AND MEDICAL HISTORY[3]

A. Personal History

Plaintiff was forty-four years old on September 1, 2005, the date she alleges she became disabled (*see* Tr. 35). In Plaintiff's application for DIB she alleged disability due to hepatitis C, carpal tunnel syndrome ("CTS"), chronic obstructive pulmonary disease ("COPD"), lower back injury, high blood pressure, memory loss, and depression (Tr. 137), although—as discussed more fully *infra*—at her hearing she essentially testified that only her back injury and CTS render her disabled. When asked why she selected September 1, 2005, as her disability onset date, Plaintiff explained that she injured her back approximately twenty years earlier and injured it a second time in a horse-riding accident (Tr. 44). She testified that she was advised she needed lower back surgery

---

[3] The issues in this appeal concern Plaintiff's physical condition only. Therefore, information pertaining to Plaintiff's mental health is not included in this Report.

(following one or both of the earlier accidents) because x-rays revealed "crushed or infused [sic] vertebras," but Plaintiff did not undergo surgery after being advised she had a "50/50 chance" of paralysis if she proceeded to surgery (Tr. 44–45). Apparently, according to the gist of Plaintiff's testimony, her back injuries—which were worsened again by yet another, more-recent, accident—"caught up with her," and she quit working on September 1, 2005 (*see* Tr. 44–45).[4]

In addition to issues related to her back, Plaintiff testified, she is disabled due to CTS-related pain in her hands, wrists, and arms (*see* Tr. 45–49). She wore wrist braces at her hearing and noted they were prescribed for her CTS "10, 15, almost 20" years earlier (Tr. 45–46). Plaintiff testified that she was told she needed CTS surgery, but she did not undergo surgery (*id.*).[5] Plaintiff, who is right-handed, also noted that she accidently cut her left wrist in August 2008 and that her left-sided CTS has worsened as a result (Tr. 46–48). When asked if she "had any other problems," Plaintiff responded by stating "I was diagnosed with COPD but [it] varies during the seasons" (Tr. 48). She noted that she decreased her smoking from two packs of cigarettes daily to one cigarette daily "about four months ago" (or, in approximately May 2008, since her hearing was held in September 2008) and reduced her alcohol consumption "within the last year" from a twelve-pack of beer daily to a twelve-pack of beer weekly (Tr. 42–43). She stated her COPD condition has remained the same since she reduced smoking (Tr. 48), but she did not report any COPD-related symptoms.

With regard to specific physical abilities, Plaintiff testified that because of "back problems" if she walks two to three blocks she gets shooting pain in her legs (Tr. 49). She estimated she can stand no more than twenty minutes before she has to sit down, and she can sit no more than ten minutes before she has to stand back up (*id.*). She also reported that she has chest pain a couple of times a week, which pain she believes is related to a broken rib (Tr. 55–56). With regard to daily activities, Plaintiff testified that she lives with her husband and does most of the cooking and cleaning, and she cares for her pets, which include a rabbit, a bird, three dogs, and a cat; however,

---

[4] Plaintiff did not state when the most recent accident (a "slip and fall") occurred, but she noted that an attorney referred her to Dr. Jon Sherman, a chiropractor, for treatment related to the fall (Tr. 44). As discussed below, Plaintiff first saw Dr. Sherman on April 16, 2004. Presumably, then, Plaintiff's slip and fall occurred during the first part of 2004.

[5] Plaintiff stated that she has not received treatment from an orthopedic specialist (for her CTS or back injury, or both) because she does not have insurance and cannot afford to pay for such treatment (Tr. 44–45).

Case No. 5:10cv167/RH/EMT

she added that it takes all day to get these things done (Tr. 50, 53, 148). In a disability report Plaintiff indicated that she does most of her housework on Sundays, and such work includes mopping, sweeping, dishwashing, and doing laundry (Tr. 150). On an average day Plaintiff watches television, occasionally checks her email on a computer, and drives and grocery shops as needed (*see* Tr. 150–52).

        B.      Medical History

On March 31, 2004, Plaintiff presented to the emergency department of Bay Medical Center ("BMC ER") with complaints of shortness of breath and a cough that had persisted for two weeks (Tr. 213). Plaintiff reported that she smoked "at least" two to three packs of cigarettes per day (*id.*). Plaintiff told Rachel Curtis, M.D., the attending physician, that she could not afford to see a doctor and was noncompliant with medications due to an inability to pay (*id.*). Dr. Curtis noted diffuse, audible, inspiratory and expiratory wheezes, with poor air movement (*id.*). Chest radiographs were unremarkable, and Plaintiff was assessed with COPD exacerbation and hypertension (Tr. 213, 218).

Plaintiff presented to Jon Sherman, D.C., on April 16, 2004, after a slip and fall accident (Tr. 204; *see also* n.4, *supra*). Upon examination Plaintiff had normal deep tendon reflexes and normal cervical and lumbar range of motion in all areas tested, although she reported "pain at [range of motion testing] end point[s]"(Tr. 204–05). Dr. Sherman noted edema at the Sacrum, Coccyx, and C2, C4, C5, T12, L1, and L5, as well as muscle spasm at C4, C5, T1, T4, and L1–L5 (*id.*). Lateral and maximum compression tests, straight leg raise test, and Goldthwait's Sign and Kemp's tests were positive bilaterally (*id.*). In an undated letter, which is the only other record from Dr. Sherman in Plaintiff's file, Dr. Sherman stated that Plaintiff received care in his chiropractic clinic a total of forty-one times (Tr. 205). In the same letter he opined that Plaintiff had reached maximum medical improvement and would be released from his care (*id.*). He stated Plaintiff would be referred to Aaron Shores, M.D., for pain management (*id.*). Finally, in the undated letter Dr. Sherman assessed Plaintiff with a "whole body impairment rating of 11%," diagnosed her with "sprain/strain" of the wrist, lumbar spine, and "shoulder," and he opined that Plaintiff's prognosis was "guarded" (*id.*).

On April 28, 2004, Plaintiff underwent blood testing at the Bay County Health Department, which testing resulted in diagnoses of hepatitis A and hepatitis C (Tr. 207–10).

Plaintiff returned to the BMC ER on January 7, 2006, with complaints of shortness of breath and cough and congestion that had lasted about three days (Tr. 212). Plaintiff reported to the attending physician, Jeffrey Appel, M.D., that she smoked "about a pack" of cigarettes per day (*id.*). Upon examination of the lungs Dr. Appel noted occasional rhonchi and "just a faint end expiratory wheeze" (*id.*). Dr. Appel assessed acute bronchitis, reactive airway disease, COPD, and pneumonia (*id.*). Chest radiographs obtained the same day were essentially normal and unchanged from those obtained in March 2004 (Tr. 217).

On November 16, 2006, Plaintiff underwent a consultative examination by Kris Lewandowski, M.D. (*see* Tr. 225–29). Plaintiff complained of back pain, which she described as constant but mild and non-radiating; night-time, intermittent, bilateral, hand numbness with radiating pain; and night-time bilateral leg numbness (Tr. 225). Plaintiff stated that she smoked one and a half packs of cigarettes and drank twelve beers daily (*id.*). She also reported that she can dress, undress, and walk and sit "without a problem" (*id.*). Her examination—which included a comprehensive physical examination and range of motion testing—resulted in normal findings (*see* Tr. 225–29).

The remaining treatment records in Plaintiff's file are from the St. Andrew Community Medical Center and reflect treatment on three to four occasions between April 30, 2008, and August 18, 2008 (Tr. 262–65).[6] At her first visit Plaintiff reported a history of hypertension and stated she had been off medication for one to two years because she could not afford it (Tr. 265). Plaintiff reported that she smoked four packs of cigarettes daily and had done so since she was fifteen years of age (*id.*). She also reported that she drank six beers daily (*id.*). Plaintiff was assessed with hypertension, hepatitis C, "chronic cig./chronic lung[sic]," and chronic alcoholism (*id.*). Plaintiff returned in August 2008 and reported that she stabbed her wrist about two weeks earlier (Tr. 262). Plaintiff also reported that she was still smoking, "but quitting," although the physician noted that Plaintiff continued to smoke and drink alcohol (*id.*). Plaintiff was assessed with "chronic cig. [sic]," chronic alcoholism, CTS, and [illegible], and the physician noted Plaintiff's wrist was expected to "get better" (*id.*). During the course of Plaintiff's treatment, she was prescribed medications (to be filled at an "in-house pharmacy"), including—relevant to her allegations of disability—Proventil, atenolol, and Chantix (Tr. 261; *see also* Tr. 54–55).

---

[6] The treatment records are handwritten and somewhat difficult to decipher.

V.   DISCUSSION

In the instant appeal Plaintiff raises two grounds for relief, which for its convenience the court organizes and considers in the following order:  Ground One, Failure to Properly Consider Plaintiff's Subjective Complaints; and Ground Two, Erroneous Residual Functional Capacity ("RFC") Determination.

   A.   Consideration of Plaintiff's Subjective Complaints

Plaintiff generally contends the ALJ erred in discounting her subjective complaints of disabling pain and other symptoms.  The Commissioner, however, states that the ALJ did not err in this regard and that Plaintiff is not entitled to relief.

As this court is well aware, pain and other subjective complaints are treated by the Regulations as symptoms of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  The Eleventh Circuit has articulated a three-part pain standard, sometimes referred to as the Hand test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986) (originally adopting the three-part pain standard).  The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Ogranaja v. Comm'r of Soc. Sec. Admin., 186 Fed. Appx. 848, 2006 WL 1526062, at *3 (11th Cir. June 5, 2006) (quoting Wilson); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]."  Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness

of subjective symptoms and complaints").[7] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether "the quantum of [symptoms a claimant] allege[s] [is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, review of the ALJ's decision establishes that she fully complied with the Eleventh Circuit's pain standard and that her credibility findings are supported by substantial evidence on the record as a whole. Initially, the ALJ specifically acknowledged her duty to evaluate Plaintiff's credibility "in accordance with the requirements of 20 CFR 404.1529" (Tr. 25). The ALJ then noted that Plaintiff's "statements concerning her alleged symptoms and impairments and the impact they have on her ability to do work related activities are not entirely credible" (Tr. 26). In support, the ALJ generally noted that her conclusions were based on "objective medical findings, the degree of medical treatment [Plaintiff] has received and/or requires and discrepancies between [Plaintiff's] assertions, other documentary evidence and the reports and findings of treating, examining and non-examining sources" (*id.*). But more specifically, in support of her findings the ALJ identified certain evidence in the record that was inconsistent with or otherwise undermined Plaintiff's complaints of disabling symptoms, which evidence is as follows:

1. Plaintiff reported that her symptoms have existed for many years, but the record shows she was able to work, and did work, since the onset of her symptoms (Tr. 26);

2. With regard to Plaintiff's COPD, that: (a) chest radiographs were unremarkable (Tr. 26, 217), (b) her lungs were clear upon examination (Tr. 26, 226), and (c) Plaintiff

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

sought emergency treatment on only one occasion (i.e., in January 2006) during the time frame relevant to this appeal (Tr. 26);

3. With regard to Plaintiff's CTS, which was diagnosed more than ten years ago, that: (a) Plaintiff worked following the diagnosis, and there is no evidence establishing that her conditioned worsened over time (*id.*), (b) although Plaintiff testified she was told she needed CTS surgery, no evidence of such medical advice exists (Tr. 26), (c) Plaintiff exhibited no deficits in grip or fine manipulation upon examination (Tr. 26, 226), and (d) Plaintiff reported she is able to pick up a coin, button a button, open doors with a knob, and lift a liter bottle, and similarly, her husband reported that she has no problems using her hands (Tr. 26–27, 193);

4. With regard to Plaintiff's alleged disabling back pain, that: (a) although she reported she injured her back twenty years ago, no diagnosis of any disorder of the spine, joints, or extremities was made during the time frame relevant to this appeal (*see* Tr. 27, 193),[8] (b) although Plaintiff testified she was told she needed lower back surgery, no evidence of such advice exists (Tr. 27), (c) Plaintiff did not see any medical specialist, such as a neurologist or orthopedic surgeon, for her complaints (*id.*), (d) although Plaintiff reported back pain "for about a year" in January 2006 (Tr. 212) and "constant back pain" in November 2006 (Tr. 225), she characterized the pain as "mild in intensity" and "nonradiating" (Tr. 27, 225), (e) Plaintiff's neurological examinations were normal, and there is no evidence of any significant limitation of range of motion in her spine, joints, or extremities (Tr. 27), (f) during the November 2006 consultative examination by Dr. Lewandowski, Plaintiff had no difficulty walking or sitting, her back was non-tender to palpation with no paraspinal muscle spasm, she had normal muscle bulk and strength, straight leg raise testing was negative, and she was able to change positions without difficulty and toe and heel walk (Tr. 27, 226–29), (g) Dr. Lewandowski's overall opinion was that Plaintiff had "no significant functional impairment" despite her complaints of back pain (Tr. 27, 226), and (h) Plaintiff reported that she had no difficulty sitting and that she sits approximately twelve to thirteen hours a day (Tr. 27, 193);

5. That although Plaintiff testified she was unable to receive medical care because she cannot afford it, "there is no evidence in the record of [Plaintiff] being turned away from treatment due to an inability to pay" (Tr. 26);[9] and

---

[8] The undersigned notes that Plaintiff submitted no earlier-dated medical records documenting the old injuries to her back or any records reflecting any earlier diagnoses or treatment related thereto.

[9] To the contrary, the ALJ noted, Plaintiff testified that she receives primary medical care at the St. Andrew Community Center, and the record establishes she has been seen there on several occasions; additionally, Plaintiff had enough money to purchase significant amounts of beer and cigarettes, which purchases belie her claim of poverty (*see* Tr. 26 (referencing Tr. 260–65)).

Case No. 5:10cv167/RH/EMT

      6.      Plaintiff's daily activities include caring for various animals, performing household chores, driving, and grocery shopping (Tr. 26–27).

As previously noted, each of the foregoing reasons is substantially supported by the record. Moreover, as can be seen, the ALJ's reasons are clearly articulated. Plaintiff, however, appears to assert that the ALJ erred in four respects (*see* Doc. 15 at 9–11). First, Plaintiff contends the ALJ erred discounting her complaints of disabling back pain because the ALJ's findings are inconsistent with Dr. Sherman's records or opinions (or both). More specifically, Plaintiff states that Dr. Sherman's records document back pain with decreased range of motion, muscle spasm, and swelling "as far back as June 15, 2004," and that Plaintiff "was given an 11% whole body impairment rating for these conditions" (*id.* at 9). Plaintiff's contention is unconvincing. Initially, the file contains only one treatment record from Dr. Sherman, which record reflects the result of an examination conducted on April 16, 2004 (not June 15, 2004, as Plaintiff asserts), when Plaintiff first presented for treatment. The April 2004 examination, however, occurred prior to the date Plaintiff alleges she became disabled and, therefore, its results do not reflect her condition during the time frame relevant to this appeal.[10] Additionally, as the ALJ noted, because no x-rays, magnetic resonance imaging scans, computed tomography scans, or electromyogram or nerve conduction studies were obtained, the basis for Dr. Sherman's opinions is unclear (*see* Tr. 23 (footnote 1)). Regardless, a chiropractor is not an acceptable medical source to establish the existence of an impairment, much less a disabling impairment. *See* 20 C.F.R. § 404.1513(a) (excluding chiropractors from the list of "acceptable medical sources" whose opinions may be considered in determining the existence of an impairment); Crawford v. Comm'r of Soc. Sec. Admin., 363 F.3d 1155, 1160 (11th Cir. 2004) (noting same and citing § 404.1513(a)).[11] Thus, in discounting Plaintiff's complaints of disabling back pain the ALJ properly considered—among other evidence—the results of the consultative

---

[10] Although Plaintiff apparently continued to see Dr. Sherman, it is unclear whether she did so during the relevant time frame (that is, from September 2005 through September 2008). As previously noted, in an undated letter Dr. Sherman stated that Plaintiff received care at his clinic forty times after her initial visit in April 2004, but there are no treatment records documenting the additional visits or establishing when they occurred. Similarly, it is unclear when Dr. Sherman assessed the "11% whole body impairment rating," as the assessment was made in the same undated letter. Nevertheless, even if the assessment is construed as reflecting Plaintiff's condition during the relevant time frame, it does not establish the veracity of Plaintiff's subjective complaints.

[11] Information from "other sources," such as a chiropractor, may be used to show the severity of an impairment or how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

Case No. 5:10cv167/RH/EMT

examination conducted by Dr. Lewandowski, a medical doctor, which examination was conducted during the time frame relevant to this appeal and which resulted in normal findings in all areas tested (*see* Tr. 225–29) instead of the vague and undated opinions of chiropractor Sherman. Finally, the undersigned notes that Dr. Sherman indicated that Plaintiff would be referred to Dr. Shores, a pain management physician, but there are no records in the file from Dr. Shores or any other pain management physician reflecting that Plaintiff obtained the recommended treatment. *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of pain-killers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) (failure to seek medical treatment for a long time during a claimed period of disability tends to indicate tolerable pain).

Second, while unclear, Plaintiff appears to contest the ALJ's credibility findings relating to her CTS by stating (only) as follows: "[Plaintiff] also suffers from carpal tunnel syndrome that causes pain and numbness in her wrists and arms (Tr. 46, 225)" (Doc. 15 at 9). To the extent this statement is construed as an argument, it is wholly unpersuasive. The pages of the transcript referenced by Plaintiff in support, pages 46 and 225, merely reflect Plaintiff's subjective complaints during her testimony before the ALJ (Tr. 46) and to Dr. Lewandowski prior to his examination (Tr. 225). Despite her complaints, however, Dr. Lewandowski observed no abnormalities or limitations with regard to Plaintiff's CTS and specifically noted—in relevant part—that Plaintiff's grip and fine manipulation were normal, and that range of motion in her wrists and hands was normal, including flexion and extension and/or deviation of all joints and fingers (Tr. 226, 228). Moreover, the ALJ properly considered that Plaintiff worked with CTS for many years, and there is no evidence to suggest that her condition worsened over time. *See* Goff v. Barnhart, 421 F.3d 785, 792–93 (8th Cir. 2005) (fact that claimant gainfully worked with her impairment, after suffering a second stroke, coupled with the absence of evidence of significant deterioration in her condition, demonstrates that her impairments are not disabling in the present).

Third, Plaintiff asserts the ALJ erred in considering her lack of medical care because "poverty excus[es] noncompliance" (Doc. 15 at 11). While Plaintiff's broad assertion is *generally*

accurate, the undersigned concludes that the ALJ did not err in this instance in considering Plaintiff's lack of care. The ALJ noted that despite Plaintiff's reported poverty, nothing in the record suggests she was ever refused treatment due to her financial status. Indeed, as the ALJ noted, the contrary is true; that is, the record establishes that Plaintiff was able to obtain treatment (e.g., at the St. Andrew Community Center, Dr. Sherman's office (forty-one times), the BMC ER, the Bay County Health Department). Additionally, the record establishes, as the ALJ noted, that even though Plaintiff claimed she could not afford treatment she obviously could afford purchases of beer and cigarettes in large quantities over an extended period of time. Thus, it appears Plaintiff had sufficient funds to pay for medical treatment. Alternatively, community medical services were available to her. But Plaintiff rarely sought treatment, which suggests her condition was not as severe as she alleges.[12]

Fourth, to the extent Plaintiff contends the ALJ erred in relying upon the lack of objective medical evidence in discounting her complaints (*see* Doc. 15 at11), Plaintiff is not entitled to relief. The ALJ properly considered this factor, *see* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."), and the ALJ's findings in this regard are well supported by the record. Additionally, the lack of objective evidence substantiating Plaintiff's complaints was but one factor among many considered by the ALJ in discounting her complaints. *See, e.g.,* Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted).

---

[12] Even if the ALJ erroneously considered Plaintiff's lack of medical care, a finding the undersigned does not make, any such error is harmless. The other reasons cited by the ALJ for discounting Plaintiff's complaints were properly considered, are supported by substantial evidence, and standing alone provide ample support for the ALJ's credibility determination. *See* Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . ."); *see also* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (the ALJ's decision will stand when an incorrect application of the regulations results in "harmless error," because the correct application would not contradict the ALJ's ultimate findings).

Thus, because the ALJ clearly articulated her reasons for discounting Plaintiff's complaints of disabling pain and other symptoms, and the reasons are supported by substantial evidence on the record as a whole, Plaintiff is not entitled to relief on this claim.

B.     ALJ's Findings Relating to Plaintiff's COPD

Plaintiff contends the ALJ erred because she determined that her COPD was a "severe" impairment but failed to include any restrictions related to the impairment in the RFC.[13] Plaintiff also contends the ALJ erred in relying exclusively on the Grids to find her "not disabled" (because in doing so, Plaintiff contends, the ALJ failed to consider the non-exertional, environmental limitations caused by her COPD, which limitations preclude an ALJ's exclusive reliance on the Grids and require vocational expert ("VE") testimony) (Doc. 15 at 8). The Commissioner asserts the ALJ did not err in failing to include any environmental limitations in the RFC, or in failing to solicit VE testimony related thereto, because the record does not establish that any such limitations exist as a result of Plaintiff's COPD (Doc. 18 at 11–12). The Commissioner notes that Plaintiff herself, in her memorandum in support of her complaint, concedes that the record contains no medical evidence indicating any specific environmental limitations resulting from her COPD (*id.* at 12). Finally, the Commissioner states, "after fully considering Plaintiff's COPD, the ALJ did not find that it resulted in any environmental limitations" (*id.* at 11).

In addressing this claim, the undersigned notes initially that the ALJ did not specifically state that Plaintiff had no environmental (or other) limitations resulting from her COPD. The inference, however, is clear from her decision; it also is supported by the record. First, and most important, the record contains no evidence suggesting that Plaintiff's ability to work is limited by her COPD. Indeed, Plaintiff acknowledges that the "record lacks medical evidence to indicate what [Plaintiff's] exact environmental limitations are" (Doc. 15 at 9). *See* Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."). Moreover, Plaintiff reported no such limitations during her

---

[13] Residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite her limitations.

testimony before the ALJ, and it is evident from her testimony that she believes she is disabled due to limitations related to her back condition and CTS. For example, after testifying somewhat extensively about her back pain and CTS-related symptoms, Plaintiff testified about her COPD, and the only testimony she provided was: 1) that she was diagnosed with COPD; and 2) that her COPD has remained the same since she reduced her smoking. <u>Immediately</u> after providing this minimal COPD-related testimony Plaintiff was asked by her attorney, "[Are there] any other symptoms that we need to consider or the [ALJ] needs to consider we haven't mentioned so far?" (*see* Tr. 48). In response, Plaintiff discussed symptoms related to her back and legs only (*see* Tr. 49–50). Similarly, at the conclusion of questioning by Plaintiff's attorney she was asked, "Anything else about your condition that you want the [ALJ] to consider that we haven't talked about so far?" (Tr. 51). In response, Plaintiff reported no COPD-related symptoms (*id.*). Likewise, even before this court, Plaintiff has not identified any environmental (or other) limitation she experiences as a result of her COPD, much less any such limitation that precludes or limits her ability to work (and which, therefore, should have been included in the RFC).[14] Nor has Plaintiff alleged that COPD interfered with her ability to work previously or that it necessitated or prompted her decision to quit working.[15]

Thus, the ALJ did not err in failing to include restrictions in the RFC for which the record provides no basis. And, while it might have been better for the ALJ to specifically state that Plaintiff had no environmental (or other) limitations resulting from her COPD, any error in failing to do so is harmless because the ALJ clearly would have reached the same decision denying benefits. <u>Brueggemann</u>, 348 F.3d at 695; <u>Diorio</u>, 721 at 728.[16]

---

[14] In the memorandum in support of her complaint Plaintiff states only as follows: "According to the World Health Organization, the most important risk factors for COPD include tobacco smoke, indoor pollution, outdoor air pollution, and occupational dusts and chemicals" (Doc. 15 at 8) (reference to website omitted). Notably, however, Plaintiff does not state that <u>she</u> is adversely affected by these risk factors (or any others), and the record contradicts any such suggestion (e.g., the record establishes that Plaintiff voluntarily exposes herself to tobacco smoke).

[15] Plaintiff specifically reported that she quit working because she could not stand on her feet due to severe pain (Tr. 137).

[16] The undersigned notes that some courts have found reversible error where an ALJ determined that an impairment was severe but failed to include any restrictions related to the impairment in the RFC determination, but those cases are distinguishable from the case at bar. *Cf.* <u>Davis-Grimplin v. Astrue</u>, No. 8:08cv23-T-24/TGW, 2008 WL 4949115, at *4 (M.D. Fla. 2008) (remanding case to Commissioner to resolve, *inter alia*, "the seemingly inconsistent

Finally, the undersigned addresses Plaintiff's remaining contention (that is, that the ALJ erred in relying exclusively on the Grids to find her "not disabled"). Quite simply, the ALJ did not rely on the Grids, exclusively or otherwise. Rather, she found Plaintiff "not disabled" at step four in concluding that Plaintiff could return to her past relevant work.[17] *See, e.g.,* Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) ("The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine [at step five] whether other jobs exist in the national economy that a claimant is able to perform."); Heckler v. Campbell, 461 U.S. 458, 462, 103 S. Ct. 1952, 1955, 76 L. Ed. 2d 66 (1983) ("Where a plaintiff's qualifications correspond to the job requirements identified by a [Grid] rule, the guidelines direct a conclusion as to whether [other] work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled [at step five].").

In sum, Plaintiff is not entitled to relief on this claim. While in another case an ALJ's failure to include in an RFC determination those restrictions related to an impairment that is deemed severe, under the unique circumstances of this case the undersigned finds no reversible error in the ALJ's failure to do so.

---

conclusions that the claimant has a severe impairment of bilateral [CTS], but does not have any functional limitations from that impairment" where prior administrative decision included CTS-related limitations and those limitations were not included in the RFC determination under review); Stevens v. Astrue, No. 3:08cv288/RV/EMT, 2009 WL 3112090, at *2 (N.D. Fla. 2009) ("because the ALJ found that the hearing loss was severe, that finding by itself indicates that the impairment could be expected to interfere, *at least to some small extent*, with the ability to engage in work-related activities," but: (1) emphasizing ALJ's statement that VE testimony was necessary and noting that, despite this statement, ALJ failed to include any restrictions related to hearing loss in questions posed to the VE and at one point even stated in a hypothetical question that Plaintiff's hearing was "unaffected"; and (2) specifically stating that the court is not "suggesting that because the ALJ found the impairment to be severe, then that automatically means the hearing loss imposes significant work-related limitations") (citing McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (step two is a threshold inquiry and only "the most trivial impairments" can be found non-severe)); Pendley v. Heckler, 767 F.2d 1561, 1562–63 (11th Cir. 1985) (where hypothetical question posed to VE did not include the claimant's anxiety or depression, both of which the ALJ found to be severe, and where the VE's testimony "was crucial to the ALJ's decision," the denial of disability benefits was not supported by substantial evidence) (emphasis added).

[17] The ALJ's finding at step four was based in part on the testimony of a VE, who was asked to ascertain the exertional levels at which Plaintiff's past relevant work ("PRW") was performed (*see* Tr. 57–58 (VE's testimony indicating that Plaintiff's PRW was sedentary, light, or medium)). Having determined that Plaintiff retained the RFC to perform light work, the ALJ then determined—consistent with the testimony of the VE—that Plaintiff could return to the PRW she performed at sedentary or light exertional levels (no additional VE testimony, such as answers to hypothetical questions that included limitations related to Plaintiff's COPD, was necessary because no such limitations were established).

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, reversibly erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED**, and that the clerk be directed to close the file.

At Pensacola, Florida this 5th day of April 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**